CITY OF SOUTH EUCLID *v.* PALLADINO ET AL.

(Nos. 6041 and 6042—Decided March 20, 1964.)

*Mr. John Angellotta,* for plaintiff.
*Mr. Anthony Calabrese, Jr.,* for defendants.

KLEIN, J.  A jury of twelve found the defendants guilty of violating South Euclid Ordinance No. 573.01 entitled "Suspicious Persons and Vagrants," the applicable portions of which read as follows:

"It shall be unlawful for any suspicious person to be within the City.  The following shall be deemed suspicious persons:
"* * *

"(c) Any person upon whose person or in whose possession shall be found any instrument, tool or other implement for picking locks or pockets or any implement that is usually employed or that reasonably may be inferred to have been designed to be employed in the commission of any felony, misdemeanor or the violation of any ordinance and who shall fail to account satisfactorily for the possession of same.
"* * *

"(e) Any person who wanders about the streets or other public ways or who is found abroad at late or unusual hours in the night without any visible or lawful business and who does not give satisfactory account of himself.
"* * *

"(g) Any—person known to obtain his living by criminal means and practices or who is known to be a companion and associate of criminals or other dissolute persons."

Each of the defendants filed a motion for a new trial based on the following five grounds:

"1. Irregularity in the proceedings of the court whereby he was prevented from having a fair trial;

"2. Misconduct and irregularity of the city prosecutor;

"3. The verdict is not sustained by sufficient evidence and is contrary to law;

"4. Error of law occurring at the trial and excepted to by the party making the application;

"5. The provisions of the ordinance of the city herein under which the applicant was charged are unconstitutional."

Since defendants' motions were not accompanied by a brief and since defendants' counsel specifically stated that he did not want an oral hearing in which to argue said motions, it is difficult for this court to ascertain the specifics upon which the motions are based. Nevertheless, the court will endeavor to discuss the five bases for the motions.

1. With respect to the first ground of defendants' motions, this court is not aware of any irregularity in the proceedings of the court.

2. With respect to the second ground, this court is not aware of any consequential misconduct or irregularity by the city prosecutor.

3. With respect to the third ground, the court cannot agree with defendants' contention that the jury verdict was not based on sufficient evidence. In fact, the uncontradicted testimony in this case established that defendants were deemed to be suspicious persons within the meaning of three separate subsections of the hereinabove set forth South Euclid ordinance, to wit: Subsections (c), (e) and (g).

As far as Subsection (c) of said ordinance is concerned, evidence was introduced that a lock pick, screw drivers, channel locks, a wire cutter, numerous pairs of gloves, etc., were found in the Palladino car. Defendants did not take the stand to explain the presence of these items. As far as the lock pick is concerned, it would be difficult, if not virtually impossible, for anyone, other than a burglar or locksmith, to explain the need for such an item, and when found in conjunction with the various other items referred to hereinabove, this court can well understand the finding of guilty reached by the jury in this case.

As far as Subsection (e) is concerned, the defendants were observed in a motor vehicle at 2:50 a. m. about to enter Green Road from Berwald Road. (Berwald and Emerson Roads are located to the east of Green Road. They are entirely residential streets which run in a semicircle or horseshoe off Green Road and each of these streets run into Green Road but neither connect with any other street.) The only explanation the defendants could give the South Euclid Police for being on Berwald Road was that they were just riding around and talking. Considering that the South Euclid Police knew that both defendants had criminal records considering the items found in

the car, considering the lateness of the hour, and considering the flimsy nature of the defendants' explanation of what they were doing on Berwald Road; this court is satisfied that the jury's verdict of guilty was supported by sufficient evidence.

As far as Subsection (g) is concerned, it need only be stated that both defendants readily admitted to the police that they had criminal records. Furthermore, since neither of the defendants took the witness stand to testify in their own behalf, the record was devoid of any evidence that either of them had any lawful means of making a livelihood. Furthermore, since both defendants had a criminal record, each of them was associated with a known criminal at the time of their apprehension on September 9, thus bringing their conduct within the contemplation of another portion of Subsection (g).

4. With respect to the fourth ground of defendants' motion, the only evidence which was admitted that might have been of questionable admissibility was the testimony of the South Euclid Police relative to admissions by both defendants that they had criminal records. Of course, in the usual case, such evidence is not admissible as part of the prosecution's case in chief. (Since the issue in the usual case is whether the defendant committed the specific crime for which he is being tried, evidence that he committed other crimes is prejudicial.) However, a trial for violating Ordinance 573.01 is a "horse of an entirely different color" since proof of a defendant's criminal record is one of the essential facts which must be proved in order to bring the defendant's conduct within the contemplation of Subsection (g) of this ordinance, and further, it is a fact which has relevance to the ordinance in general. In other words, in the usual case evidence of other crimes having been committed by the defendant is not relevant to the question of whether the defendant committed the crime for which he is being tried; however, a trial for violating Ordinance 573.01 is peculiar in that evidence of other crimes is not only relevant it is one of the essential and necessary elements of the ordinance itself.

If evidence of a prior criminal record were excluded, how else could Subsection (g) of Ordinance 573.01 be used as a basis for establishing a violation? This question answers itself. In this regard, it is important to note that the Supreme Court of Ohio in *Morgan* v. *Nolte*, 37 Ohio St. 23, upheld the validity of

an ordinance directed at the same type of situation as that encompassed by Subsection (g) of Ordinance 573.01. Paragraph 5 of the syllabus of the Supreme Court decision in the *Morgan case* states as follows:

"An ordinance under this statute, providing for the punishment of any known thief found in the municipality, is valid."

Again, with respect to a prosecution under an ordinance of the type referred to in the *Morgan case,* how could a city establish a violation thereof without being able to introduce evidence of a defendant's criminal record? This question answers itself. It is, therefore, the conclusion of this court that the defendants' admissions to the police that they had criminal records were admissible as part of the prosecution's case in chief.

5. The fifth ground of defendants' motions is directed at the constitutionality of South Euclid Ordinance 573.01.

In his opening statement, defendants' attorney raised the question of the constitutionality of Ordinance 573.01. This attack was a general one. It was not directed at any particular subsection of said ordinance, but rather to the ordinance in its entirety.

Section 715.55, Revised Code, specifically authorizes municipalities to enact Ordinances such as 573.01. This statute provides in part as follows:

"Any municipal corporation may provide for:
"* * *

"(B) The punishment of any vagrant, common street beggar, common prostitute, habitual disturber of the peace, known pickpocket, gambler, burglar, thief, watch stuffer, ball game player, a person who practices any trick, game or device with intent to swindle, a person who abuses his family, *and any suspicious person who cannot give a reasonable account of himself.*" (Emphasis added.)

In *Welch* v. *City of Cleveland* (1917), 97 Ohio St. 311, the Supreme Court upheld the validity of an ordinance, the applicable portion of which reads as follows:

"Section 1. That any person found loitering about any bar room, gambling house, pool room, vessel, house of ill fame or gaming device, or about pools or baseball, prize fighting or horse racing; *or found wandering about the streets, either by day or by night, without being able to give a reasonable and sat-*

*isfactory account of himself,* and any person with opium, opium pipe, cocaine or heroin in his possession; *and any person upon whom shall be found any device, instrument or thing used in the commission of burglary, larceny or other crime, or for picking locks or pockets,* or any device, instrument or thing used in obtaining money under false pretenses; *and any person who obtains his living by criminal means and practices or who is the companion and associate of criminals or other dissolute persons,* and any person who deliberately and unnecessarily crowds or jostles passengers on street cars, railroads or in railroad stations for the purpose of committing theft or of aiding others to commit theft shall be deemed and held to be a suspicious person.'' (Emphasis added.)

The language of the above quoted Cleveland ordinance and Subsections (c) (e) (g) of South Euclid Ordinance 573.01 are strikingly similar. It must, therefore, be concluded that South Euclid City Ordinance 573.01 is constitutional. (See also *City of Columbus* v. *McCrory,* 38 Ohio Law Abs. 142.)

It is the established law of this State that there is a general presumption favoring the validity of legislation, and that if a piece of legislation bears any reasonable relationship to the public welfare or morals, a court cannot declare it unconstitutional.

This rule is stated as follows in 10 Ohio Jurisprudence 2d 227-231:

''Section 151. (Burden of Proof.) In consequence of the general presumption in favor of the validity of legislation, the burden of showing the unconstitutionality of a statute or ordinance is upon the one challenging its validity. The proof of unconstitutionality must be clear and beyond a reasonable doubt.

''Section 152. (Legislative Discretion in Exercise of Police Power.) The courts have power to review a legislative determination as to what is a proper exercise of the police power but such review is limited and courts are inclined to defer to the judgment of the state or municipal legislative body to which the matter is committed in the first instance, and will not interfere unless it is clear that the statute or ordinance has no real or substantial relation to the public health, morals, safety, or welfare, or is unreasonable or arbitrary, and infringes rights secured by the fundamental law.

"It belongs to the General Assembly or other legislative body clothed with the police power to determine primarily what measures are appropriate or needful for the promotion of the objects of the police power.

"When legislation has a real and substantial relation to the prevention of conditions detrimental to the public health, morals, or safety, no matter how unwise the measure itself seems to individual judges, it is not for the judicial tribunals to nullify it upon constitutional grounds. If the legislation bears any reasonable relation to the public welfare and public morals the court may not declare it invalid. Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community. They are in a better position than the courts to judge the public need and must be allowed a considerable latitude of discretion."

In the instant situation we have two known criminals prowling the public streets in a motor vehicle at 2:50 a. m., said motor vehicle being well equipped with the stock and trade of the burglar profession and said know criminals not being able to give a reasonable account of their presence on a certain residential street. Can it be said that an ordinance such as South Euclid Ordinance 573.01 which is directed at controlling this type of conduct does not bear a reasonable relationship to the public welfare? I think not. The Federal and State Constitutions are not so broad that vandals, thieves, burglars, and other unsavory characters must be permitted to prowl the streets at 2:50 a. m., without being able to give a reasonable account of themselves.

In concluding this opinion, it should be noted that a party attacking the constitutionality of a law must clearly prove that it contravenes some express provision of the Constitution. This rule is ably stated as follows in 10 Ohio Jurisprudence 2d 248-251:

"Section 167. (Generally.) In order to establish the unconstitutionality of a law, the party asserting such fact must clearly show that the law contravenes the Constitution in some express provision and, if the operation of the law is relied

upon as establishing its unconstitutionality, this must be shown by a presently existing state of facts.

"Section 168. (Clear Repugnancy to Constitution Required.) Even though a strong presumption operates in favor of the constitutionality of legislation it is frequently quite difficult to determine the exact line where validity ceases, and invalidity intervenes. Certainly, it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts are to be considered void. It has been said that judicial interference with a legislative act can never be permitted in a doubtful case.

"It is repeatedly held in Ohio that a clear incompatibility between a law and the Constitution must exist before the judiciary is justified in holding the law unconstitutional. This rule has been variously expressed. Thus, to invalidate a statute, the courts of this state have declared that the repugnancy between the statute and the Constitution must be direct, free from doubt, clear, plain, manifest, obvious, strong, palpable, substantial, necessary, etc.; but all these various adjectives embrace the fundamental requirement that the repugnancy between the statute and the Constitution must be incapable of a fair reconciliation. The validity of a statute or ordinance ought not to be questioned unless it is so obviously repugnant to the Constitution that, when pointed out by the judges, all men of sense and reflection in the community may perceive the repugnancy.

"In some cases the nature of the particular power exercised by the legislature is specifically referred to in stating the rule that a conflict between the law and the Constitution must clearly appear before the law can be declared void. This is true in cases of the exercise of the police power and the power of taxation."

In the light of the above, it must be emphasized that the defendants have never, either in their motions for a new trial or on any occasion during the trial itself, pointed out to this court the section of the Constitution which they claim has been infringed upon by South Euclid City Ordinance 573.01.

Defendants' motions for a new trial are overruled.

*Motions overruled.*